UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DONNA M. STEWART, ) | No. ED CV 07-1070-PLA |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, ) COMMISSIONER OF SOCIAL ) SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 31, 2007, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 20, 2007, and September 24, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 17, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on January 24, 1959. [Administrative Record ("AR") at 102, 260.] She has a tenth grade education [AR at 63, 261], and past relevant work experience as a caretaker and a waitress. [AR at 59, 261.]

On August 2, 2004, plaintiff protectively filed the instant applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since October 3, 2002, due to mental impairments, including depression and anxiety. [AR at 57-64, 102-06.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 33-50, 107-08.] A hearing was held on July 11, 2006, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 256-73.] On April 10, 2007, the ALJ determined that plaintiff was not disabled. [AR at 8-18.] When the Appeals Council denied plaintiff's request for review on July 23, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 3-6.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

1  prima facie case of disability is established.  The Commissioner then bears the burden of
2  establishing that the claimant is not disabled, because she can perform other substantial gainful
3  work available in the national economy.  The determination of this issue comprises the fifth and
4  final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828
5  n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2007, and had not engaged in any substantial gainful activity since the alleged onset date of the disability. [AR at 13.]  At step two, the ALJ concluded that plaintiff has the following "severe" impairments: back pain with mild degenerative disease, chest pain atypical for angina, hypertension, obstructive respiration improved with CPAP, diabetes, and status post gastric bypass surgery for morbid obesity. [AR at 13.]  At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 14.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform medium work. [AR at 14.]  Specifically, the ALJ concluded that plaintiff could lift and/or carry up to 50 pounds occasionally and up to 25 pounds frequently, stand and/or walk up to six hours in an eight-hour day, and sit up to six hours in an eight-hour day.  The ALJ noted that plaintiff's depression imposes no more than mild limitations. [AR at 14.]  At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a waitress. [AR at 17.]  Accordingly, the ALJ found plaintiff not disabled. [AR at 17-18.]

/
/
/
/

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

# V.

# **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) failed to properly consider the opinion of plaintiff's treating psychiatrist; (2) failed to properly consider the type, dosage, and side effects of plaintiff's medications; (3) selectively misrepresented the record regarding plaintiff's mental and physical impairments; and (4) failed to properly consider the severity of plaintiff's mental impairment. Joint Stip. at 2-3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**SEVERE MENTAL IMPAIRMENT**

Plaintiff contends that the ALJ erred in finding that plaintiff did not have a severe mental impairment. Joint Stip. at 14-17.

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "The Supreme Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work). An impairment or

combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. See Corrao, 20 F.3d at 949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling ("SSR") 85-28[2])); see also Smolen, 80 F.3d at 1290 (citations omitted); 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

Plaintiff's treating psychiatrist, Samuel E. Dey, Jr., M.D., diagnosed plaintiff with major depression and panic disorder on November 2, 1999. [AR at 125.] At that time, Dr. Dey assessed plaintiff's Global Assessment of Functioning ("GAF") at 50.[3] [AR at 125.] Dr. Dey continued to treat plaintiff for her mental illness at least until October 14, 2004. Throughout his treatment of plaintiff, Dr. Dey prescribed Paxil and Xanax, and indicated that these medications were only partially effective in relieving plaintiff's symptoms. [AR at 115-25.] In fact, on multiple occasions, Dr. Dey reported that plaintiff was continuing to experience significant depression despite the medication. [AR at 116-18.] The ALJ commented that plaintiff received treatment from Dr. Dey starting in 1999, but concluded that the findings on clinical examinations were "generally benign." [AR at 13.] Defendant argues that Dr. Dey's 1999 report is irrelevant to the issue of whether plaintiff suffered from a severe mental impairment as of October 3, 2002 (the date of her alleged

---

[2]   Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[3]   A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM IV at 34.

onset), and points out that despite Dr. Dey's assessment of a GAF score of 50, plaintiff was still able to maintain employment at that time. Joint Stip. at 17. While Dr. Dey's 1999 report in and of itself might not be helpful in determining whether plaintiff suffered from a severe mental impairment in 2002, it is relevant in that it places Dr. Dey's subsequent progress notes into context. Moreover, the fact that plaintiff continued to work at the time of Dr. Dey's 1999 assessment is not conclusive of whether she suffered from a mental impairment that was severe, as plaintiff does not have to prove that she is actually disabled at step two of the evaluation process. Bowen v. Yuckert, 482 U.S. at 146.

Further, although the consultative psychiatric evaluations suggest that plaintiff's mental impairment had only a limited impact on her functional capacity, the consultative psychiatrist did confirm a diagnosis of depression. [AR at 191-92, 196.] Finally, as of June 2, 2006, plaintiff was given a GAF score of 58 by a doctor at Riverside County Mental Health. [AR at 223.] This score indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. DSM IV at 34. The ALJ did not address any of plaintiff's GAF scores.[4]

In light of this evidence, plaintiff has proven that she suffered from more than a slight mental impairment. Although this evidence may ultimately not be enough to prove that plaintiff is disabled within the meaning of the Act, it is sufficient to satisfy the "threshold element" of a "severe" impairment at step two of the sequential evaluation. Bowen v. Yuckert, 482 U.S. at 146. Accordingly, this action must be remanded to allow for a continuation of the five step sequential evaluation with respect to plaintiff's mental impairment.[5]

/

/

---

[4] While a GAF score may not have a "direct correlation" to the Social Security severity requirements (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that the implications of plaintiff's GAF scores may be ignored without sufficient reason.

[5] As the ALJ's reconsideration of the issues on remand may impact the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address plaintiff's remaining claims in this Order.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for a continuation of the five step sequential evaluation in light of the Court's determination that plaintiff suffers from a severe mental impairment.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: November 4, 2008

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

8